UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 1:15-cr-00200-JMS-TAB ) |
| JOSE TRINIDAD GARCIA, JR. (04), | ) ) |
| Defendant. | ) |

**ORDER DENYING MOTION TO SUPPRESS**

Defendant Jose Trinidad Garcia, Jr., has been indicted for one count of Conspiracy to Distribute Controlled Substances. [Filing No. 1.] He has filed a motion to suppress all evidence that he claims the Government illegally obtained as a result of wiretap surveillance. [Filing No. 237.] The Government opposes Mr. Garcia's motion. [Filing No. 251.] For the reasons that follow, the Court **DENIES** Mr. Garcia's motion to suppress.

**I.**
**FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." *United States v. Carroll*, 750 F.3d 700, 703-04 (7th Cir. 2014) (quoting *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014)). "Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports [the] decision." *Carroll*, 750 F.3d at 704.

## II.
### BACKGROUND

In 2015, law enforcement was investigating a drug-trafficking and money-laundering conspiracy involving several individuals, including Mr. Garcia. It filed five separate applications for interception of wire communications during the course of its investigation. The district court issued five Orders authorizing each application:

- On August 7, 2015, the first Order was issued authorizing wiretap surveillance of Target Phone 1 for a cellular telephone used by Alfonso Pineda-Hernandez, and Target Phones 2 and 3 for cellular telephones used by Nicolas Cazares-Garcia.

- On August 26, 2015, the second Order was issued authorizing wiretap surveillance of Target Phone 4 for a cellular telephone used by Mr. Pineda-Hernandez and Target Phone 5 and 6 for cellular telephones used by Miguel Barragan-Lopez.

- On September 4, 2015, the third Order was issued authorizing an extension of the continued interception of Target Phones 2 and 3, wiretap surveillance of Target Phone 7 for a cellular telephone used by Mr. Barragan-Lopez, and wiretap surveillance of Target Phone 8 for a cellular telephone used by Mr. Pineda-Hernandez.

- The fourth Order was issued on September 28, 2015 authorizing interception of Target Phone 9 for a cellular telephone used by Mr. Cazares-Garcia, Target Phone 10 for a cellular telephone used by Aurelio Estrada-Alvarado, and Target Phone 11 for a cellular telephone used by Mr. Garcia.

- The last Order was issued on October 19, 2015 authorizing interception of Target Phone 12 for a cellular telephone used by Mr. Pineda-Hernandez and Target Phones 13 and 14 for cellular telephones used by Mr. Garcia.

As a result of using wiretap surveillance and other investigative procedures, law enforcement applied for and obtained two search warrants for two separate Indianapolis addresses. Mr. Garcia challenges all five applications and district court Orders, and claims that all evidence seized from the two properties should be suppressed. [Filing No. 238 at 1-2.]

## III.
### DISCUSSION

Mr. Garcia raises three issues, and the Court has restructured them as follows: 1) the August 7, September 4, September 28, and October 19, 2015 wiretap applications[1] do not satisfy the necessity requirement under 18 U.S.C. § 2518(1)(c) that normal investigative procedures were inadequate, [Filing No. 238 at 10; Filing No. 238 at 15]; 2) the five Orders authorizing the wiretap surveillance did not make adequate findings regarding the inadequacy of using other investigative procedures, [Filing No. 238 at 5]; and 3) evidence seized from two Indianapolis properties as a result of the execution of two search warrants triggered by the contents of the wiretap should be excluded as fruit of the poisonous tree, [Filing No. 238 at 20]. The Court will address the issues accordingly.[2]

---

[1] Mr. Garcia does not appear to challenge the August 26, 2015 application. The Government also points out that Mr. Garcia does not specifically address the August 26, 2015 application, but only makes general allegations about its insufficiency. [Filing No. 251 at 9.] Because Mr. Garcia has failed to adequately develop any arguments pertaining to the August 26, 2015 application, the Court will not consider it. *See, e.g., United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) ("The parties—not the courts—must research and construct available legal arguments. . . . Accordingly, this Court has long warned that 'perfunctory and undeveloped arguments' are deemed waived.") (citations omitted).

[2] The wiretap applications, affidavits, and Orders are maintained under seal. The Court granted the Government's motion to partially unseal the applications, affidavits, and Orders to provide Mr. Garcia with copies of these documents pursuant 18 U.S.C. § 2518(9). Thus, because these documents are maintained under seal otherwise, the Court will not cite to the record and will generally summarize the content of these documents as necessary.

### A. Wiretap Applications

Mr. Garcia claims that each wiretap application fails to provide a specific factual basis to demonstrate that other forms of investigative procedures either failed to accomplish the goals of the investigation or reasonably appeared unlikely to accomplish these goals after the investigation had begun. [Filing No. 238 at 15.]

In response, the Government claims that the wiretap applications meet the necessity requirement of 18 U.S.C. § 2518(1)(c). [Filing No. 251 at 5.] The Government argues that the affidavits in support of each wiretap application explained the investigative techniques that law enforcement applied, and the limited information produced from those techniques. [Filing No. 251 at 5-12.]

Each application for wiretap surveillance must contain a full and complete statement of the following: 1) whether or not other investigative procedures have been tried and failed, 2) why other investigative procedures reasonably appear to be unlikely to succeed if tried, or 3) that other investigative procedures are too dangerous. *United States v. Ceballos*, 302 F.3d 679, 683 (7th Cir. 2002); 18 U.S.C. § 2518(1)(c). The Government is required to establish the need for electronic surveillance by demonstrating one of the three alternatives. *United States v. Gray*, 410 F.3d 338, 342-43 (7th Cir. 2005) (quoting *Ceballos*, 302 F.3d at 683). "This section of the statute was not intended to ensure that wiretaps are used only as a last resort in an investigation, but rather that they are 'not to be routinely employed as the initial step' in a criminal investigation." *United States v. McLee*, 436 F.3d 751, 762-63 (7th Cir. 2006); *United States v. Thompson*, 944 F.2d 1331, 1340 (7th Cir. 1991) (quoting *United States v. Giordano,* 416 U.S. 505, 515 (1974)). The burden of establishing necessity is "not great," and the Court must review the Government's compliance with the necessity requirement in a "practical and common-sense fashion." *Gray*, 410 F.3d at 343

(citing *Ceballos*, 302 F.3d at 683; *United States v. Zambrana*, 841 F.2d 1320, 1329 (7th Cir. 1988)).

In order to determine whether the Government met its burden that it was necessary to obtain wiretap surveillance, the Court will review each wiretap application and supporting affidavit that Mr. Garcia challenges.

   1. *August 7, 2015 Application*

With regard to the August 7, 2015 application, Mr. Garcia takes issue with the fact that the Government did not question two confidential sources that it utilized during its ongoing investigation. [Filing No. 238 at 10-11.] He claims that at no point did the Government attempt to develop additional confidential sources, and that the Government's contention that the investigation will not be furthered by arrests and cooperating defendants alone is inconsistent with the standard of the statute. [Filing No. 238 at 11.] He further claims that the Government was having considerable success with the investigation prior to the wiretap, and that the necessity requirement exists in order to limit the use of wiretaps.

The Government claims that Mr. Garcia ignores the fact that law enforcement had to use a traditional investigative technique to develop a confidential informant, that the affidavit sufficiently explains why the second confidential informant could not "infiltrate the organization to determine who the organization members were," and that "interviews of known subjects would be unproductive" to the investigation. [Filing No. 251 at 7.] The Government claims that the affidavit explained the techniques that it applied, and the limited information produced from those techniques. [Filing No. 251 at 8.]

The Court is not persuaded by Mr. Garcia's argument. The Government has adequately explained why the use of traditional investigative procedures had been tried and failed, or appeared

unlikely to succeed. In the affidavit for the August 7, 2015 application, the Government outlined a full picture of the procedures that law enforcement had used in its investigation of the drug-trafficking and money-laundering business, and discussed the role that the two confidential sources played. The Government explained how each confidential source became involved and their level of involvement. It stated that each confidential source would call or send messages to other members of the conspiracy, would agree on locations to pick up the drugs, and then would make arrangements to pay for it. The affidavit explained that confidential source one eventually discontinued his or her involvement helping police with the investigation. According to the affidavit, while law enforcement was able to gather evidence using traditional investigatory procedures, including controlled buys using confidential informants, physical surveillance, and stationary camera surveillance, among other techniques, the mere use of these procedures was not enough to infiltrate the full operation of the drug-trafficking and money-laundering activities. Moreover, the use of two confidential informants was insufficient because they both lacked knowledge about many aspects of the drug operations, including who the drug suppliers were, who the wholesale customers were, and where the drugs were stored.

With the benefit of hindsight, Mr. Garcia believes that other less intrusive investigative procedures could have been used that would not require a wiretap, such as the use of additional confidential informants or by making arrests. However, the Court finds this to be of no consequence since "the statute does not require that other investigative procedures actually be implemented before an order may be issued for the interception of wire communications . . . '[i]t is not required that a [wiretap] be used as a last resort, but only that the success of other methods of investigation appear unlikely.'" *Zambrana*, 841 F.2d at 1329; *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir. 1976) (quoting *United States v. Whitaker*, 343 F.Supp. 358, 362-63 (E.D.

Pa. 1972)). Here, the Government has set forth valid justifications for why it needed wiretap surveillance. *See, e.g., Zambrana*, 841 F.2d at 1331 (finding that the government satisfied 18 U.S.C. § 2518(1)(c) when it explained that the use of traditional investigative techniques would not succeed in identifying all co-conspirators at all levels of the conspiracy). Thus, the Court finds that the Government has met its burden of showing the necessity for wiretap surveillance for the August 7, 2015 application and denies Mr. Garcia's motion to suppress the contents of the intercepted communication.

### 2. September 4, 2015 Application

Mr. Garcia claims that in the September 4, 2015 application, the Government references the same two confidential sources from the previous affidavits and that it does not state why it did not develop additional confidential sources. [Filing No. 238 at 16.] He argues that the Government believed that wiretap interception is permissible if "no one informant can provide the Government all the information it needs. . . ." [Filing No. 238 at 16-17.] He further contends that the Government gathered a lot of valuable information from the wiretap authorized by the August 7, 2015 Order, and that the subsequent affidavits do not "contain an adequate description of that evidence, nor [ ] indicate how or why that evidence is insufficient to fulfill the objectives of the investigation." [Filing No. 238 at 17-18.] Moreover, Mr. Garcia claims that most of the time when his name is mentioned in the affidavit, it does not pertain to his alleged involvement in the conspiracy and that the affidavit does not describe what traditional investigative procedures were used relating to Mr. Garcia. [Filing No. 238 at 19.]

In response, the Government argues that the affidavit for the September 4, 2015 application contained a "Necessity for Interception of Communications" section that it claims summarized the evidence obtained from the first authorized interception and thoroughly explained all investigative

procedures that law enforcement used and the limitations it encountered. [Filing No. 251 at 9-10.] The Government contends that the affidavit stated that Mr. Garcia was intercepted over one of the telephones and that he was observed during surveillance activities. [Filing No. 251 at 10.] The Government further claims that in the affidavit, the Government sufficiently described the prior investigative procedures that were used to investigate Mr. Garcia. [Filing No. 251 at 11.]

Mr. Garcia cites *United States v. Carneiro*, 861 F.2d 1171 (9th Cir. 2001), as support that the wiretap application did not meet the necessity requirement. [Filing No. 238 at 18.] In *Caneiro*, the Ninth Circuit found that three wiretap applications contained omissions and misstatements. 861 F.2d at 1180-83. For example, in one of the affidavits supporting one of the applications, the Ninth Circuit found that the Government failed to discuss what traditional investigative procedures it used on the defendant prior to seeking a wiretap on his telephone, and found that a wiretap was sought for the defendant simply because he was "believed to be a member of the conspiracy. . . ." *Id.* at 1180-81. Mr. Garcia has not pointed to any omissions or inaccuracies in the September 4, 2015 application and affidavit. In fact, the application and affidavit sufficiently explain the scope of the wiretap, Mr. Garcia's involvement, and the investigative techniques that law enforcement used. The purpose of the application was to seek continued interception of Target Phones 2 and 3, and wiretap surveillance of Target Phones 7 and 8 in order to gain access to the nature, extent, and methods of the drug-trafficking business, the identities of all those involved, the concealment, transfer, and location of the proceeds, and the sources that were used to fund the illegal activities. The affidavit identified the members of the conspiracy under investigation and their level of involvement. Thus, while Mr. Garcia's telephone was not the target of the September 4, 2015 application, he was identified as a "Named Interceptee," for communicating with the target phones and was observed engaging in drug-trafficking activities.

Moreover, the affidavit explained all the investigative procedures that the Government used since the beginning of its investigation and the evidence it discovered after the August 7, 2015 Order. After describing evidence derived as a result of the investigation, the Government explained what traditional investigative procedures law enforcement continued to used, including the use of two confidential informants (one of whom stopped working with police), physical surveillance, stationary surveillance cameras, and tracking devices. The Government also explained why the use of each traditional investigative procedure would not infiltrate the full extent of the drug-trafficking organization. The affidavit further described why law enforcement had not been able to use additional confidential informants or undercover agents, given that it would be difficult to gain the trust of the members of the drug-trafficking organization, that the information they would gain would be limited, and that it would hinder the investigation in many ways. Accordingly, the Court denies Mr. Garcia's motion to suppress the contents of the intercepted communication from the September 4, 2015 application.

### 3. *September 28, 2015 Application*

Mr. Garcia argues that it was not until the September 28, 2015 application that the Government identified the use of a third confidential informant, but that the Government failed to "provide any insight or explanation as to when the [confidential informant] was recruited, why [he or she] was not recruited earlier, or the basis of [his or her] knowledge that [Mr. Garcia] was specifically involved in criminal activity." [Filing No. 238 at 17.] He claims that "[b]y including the limited information known about [Mr. Garcia] with the evidence relating to the other members of the alleged conspiracy, [his] involvement was unnecessarily skewed." [Filing No. 238 at 19.] Mr. Garcia also raises several general arguments – that the application does not meet the necessity requirement, that the affidavit is silent as to why the Government was unable to develop additional

9

informants, and that the affidavit does not contain an adequate description of the evidence or indicate why that evidence is insufficient to fulfill the objectives of the investigation without another wiretap. [Filing No. 238 at 17-19.]

The Government responds that the affidavit for the September 28, 2015 application contains detailed information about the telephone record analysis between Mr. Garcia and other suspected members, information about the defendant from a confidential source, information about intercepted communications between Mr. Garcia and another co-defendant, and the identification of Mr. Garcia making purchases of heroin under traditional surveillance techniques. [Filing No. 251 at 10-11.] The Government further argues that the affidavit describes investigative techniques that were used in conjunction with intercepted communications and that some of those were directed at Mr. Garcia, and explains the limits of solely using traditional investigative techniques. [Filing No. 251 at 11.]

The Court once again finds Mr. Garcia's arguments unfounded. The Government met its burden of necessity with regard to the September 28, 2015 application. In the application, the Government explained that it sought authorization to intercept Target Phone 11, which was used by Mr. Garcia, and that Mr. Garcia was also identified as a "Named Interceptee." The affidavit indicated that with the use of intercepted phone calls and controlled buys, Mr. Garcia was found to be a significant supplier of heroin in the Indianapolis area. The affidavit explained the evidence that law enforcement uncovered through the use of controlled buys with its confidential sources, intercepted phone calls, physical surveillance, stationary surveillance cameras, and mobile trackers. The Government also provided an analysis of the evidence that was gathered as a result of the previous intercepted communication from the target phones. Moreover, as Mr. Garcia points out, law enforcement used a third confidential source that indicated that Mr. Garcia was a

significant supplier of drugs.  Law enforcement's use of another confidential source demonstrates that it continued finding other investigative techniques to further its investigation without relying solely on wiretap surveillance.

As the Government has repeatedly shown, there were several members of the conspiracy who played different roles and the information that was necessary to unravel the complexity of the drug-trafficking organization was not accessible solely with the use of traditional investigative procedures.  For instance, confidential sources one and two had no idea where the controlled substances were kept or manufactured, even though they engaged in controlled purchases with members of the conspiracy.  Thus, the Court finds that the Government met the necessity requirement, and denies Mr. Garcia's motion to suppress the contents of the intercepted communication.

### 4. October 19, 2015 Application

Mr. Garcia does not raise any specific arguments regarding the October 19, 2015 application. He merely makes the same general arguments – that the application and affidavit do not meet the necessity requirement, that the affidavit is silent as to why the Government was unable to develop additional informants, and that the affidavit does not contain an adequate description of the evidence or indicate why that evidence is insufficient to fulfill the objectives of the investigation without another wiretap.  [Filing No. 238 at 17-19.]

In response, the Government argues that the October 19, 2015 application was submitted to intercept Target Phones 13 and 14, and that the affidavit provided detailed information about "[Mr. Garcia's] activities, the results of traditional investigative techniques as they pertained to [Mr. Garcia], and the continuing limitations of those techniques."  [Filing No. 251 at 11.]  The Government contends that the affidavit provided an analysis of previously authorized intercepted

11

telephones and their contact with Target Phones 13 and 14. [Filing No. 251 at 12.] The Government also points out that the affidavit explained law enforcement's use of traditional investigative procedures through the course of the investigation and the limitations that law enforcement encountered using those investigative techniques. [Filing No. 251 at 12.]

Mr. Garcia does not point to or cite any specific challenges within the October 19, 2015 application. Thus, taking into account Mr. Garcia's general arguments and after reviewing the affidavit, the Court finds that the Government met its burden of necessity. As it did in all the affidavits for the previous wiretap applications, the Government described the purpose of the wiretap and outlined the evidence that it gathered as a result of all previously intercepted communications. The affidavit described the members of the conspiracy who were the target of the wiretap, which included Mr. Garcia, and "Named Interceptees" who communicated with those targets, which also included Mr. Garcia. The affidavit also specified the traditional investigative procedures that law enforcement used, such as the use of confidential sources, video surveillance cameras, physical surveillance, tracking devices, and trash searches, and explained in detail why the sole use of these and other traditional investigative techniques would limit its investigation. Accordingly, the Court denies Mr. Garcia's motion to suppress the contents of the intercepted communication from the October 19, 2015 application.

### B. Court Orders Authorizing Wiretaps

Mr. Garcia argues that none of the five court Orders make any specific factual findings regarding the use of normal investigative procedures, and that all of them included conclusory language that simply recited the language of the statute. [Filing No. 238 at 6.] He argues that these conclusions do not satisfy the requirements of the statute because the Orders do not set forth factual findings that are unique to this case. [Filing No. 238 at 6.] Mr. Garcia further claims that

12

the district court's finding regarding the inadequacy of normal investigative procedures is the same in all five Orders.  [Filing No. 238 at 9.]

The Government responds that Mr. Garcia "erroneously conflates the levels of detail required" in the applications and Orders.  [Filing No. 251 at 13.]  The Government claims that the language in the Orders comports with the statutory requirements and that the statute does not require details about the applications to be included in the Orders because such details are determined on the basis of the facts from the application.  [Filing No. 251 at 13.]  The Government argues that the facts need to meet the statutory threshold, but that the bases regarding the determination do not need to be outlined in the authorizing Orders.  [Filing No. 251 at 14.]

When an application for wiretap surveillance is filed, the district court may issue an ex parte order authorizing it if 1) "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense;" 2) "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;" 3) "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;" and 4) "there is probable cause for belief that . . . the place where . . . electronic communications are to be intercepted are being used . . . in connection with the commission of such offense, or are . . . commonly used by such person."  18 U.S.C. § 2518(3).

The Court finds Mr. Garcia's arguments unpersuasive.  He cites to *United States v. Martinez*, 588 F.2d 1227 (9th Cir. 1978), which he claims supports his position that the five Orders authorizing wiretap surveillance do not satisfy the statutory requirement because the Orders do not contain the requisite factual determinations that are unique to this case.  [Filing No. 238 at 6.] However, *Martinez* does not bind this Court and, moreover, does not stand for that proposition.  In

fact, it supports the Government's position.  The defendant in *Martinez* appealed the authorization of a wiretap, and made a similar argument – that the judge who approves a wiretap application and issues a warrant must make specific findings of fact.  588 F.2d at 1231.  The Ninth Circuit disagreed:

> [T]he contention that the judge who actually issued the warrant should have been required to issue findings of fact to support his order is erroneous.  In this case, the order was conclusory, merely repeating the statutory language. . . .  The record reveals, however, that the order was based on full consideration of the information contained in the application, including the affidavit discussed [ ].  The factual grounds upon which the judge issued the order can be inferred from the affidavit, and to require extra findings would not add to our ability to properly review his actions. . . . [The statute] contains no requirement that specific findings be made.

*Id*. at 1233-34.

Mr. Garcia does not cite any authority and there is no Seventh Circuit precedent that holds that findings of fact are required in a court order authorizing wiretap surveillance.  Here, each Order stated conclusory findings and recited language from the statute, but the authorization of each Order was based on the Government's factual basis set forth within each application.  Since the Court found that the Government established the necessity requirement for wiretap surveillance for each application, the Court finds no error with each Order authorizing the wiretap.

### C.  Evidence Obtained from Search Warrants

Mr. Garcia argues that because evidence that was obtained from the wiretap was a violation of his Fourth Amendment rights, the evidence that was seized from two residences should be suppressed as "fruit of the poisonous tree" because the search warrants were obtained as a result of the wiretap.  [Filing No. 238 at 20-21.]  Mr. Garcia claims that the Government relied on several intercepted phone calls between him and other individuals as evidence to obtain probable cause for the applications of two search warrants.  [Filing No. 238 at 22-24.]  He argues that the Government collected "firearms, firearm accessories, pills, controlled substances, cellular

14

telephones, digital scales, a grinder, drug residue and miscellaneous drug materials" from the two residences and it intends to introduce them at trial.  [Filing No. 238 at 24.]

In response, the Government argues that the information that was obtained "from the interception of communications was legally obtained in compliance with statutory and constitutional requirements" and that Mr. Garcia "does not argue that the applications for the search warrants or their executions had any independent infirmities. . . ."  [Filing No. 251 at 15.]

The guiding principle for determining whether evidence obtained from a violation of the Fourth Amendment is admissible against the accused at trial is whether "[t]he exclusionary prohibition extends as well to the indirect as the direct products of such invasions." *United States v. Crews*, 445 U.S. 436 (1980) (quoting *Wong Sung v. United States*, 371 U.S. 471, 416 (1963)).  "[T]he exclusionary sanction applies to any 'fruits' of a constitutional violation – whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *Crews*, 445 U.S. at 470.

As set forth above, Mr. Garcia's Fourth Amendment rights were not violated when the court issued five Orders authorizing wiretap surveillance.  Therefore, any evidence seized from the execution of the search warrants as a result of the intercepted communication was lawfully obtained.  Mr. Garcia does not present any other challenges regarding the applications of the two search warrants or their executions.  Thus, the Court denies Mr. Garcia's motion to suppress the evidence.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **DENIES** Mr. Garcia's Motion to Suppress. [Filing No. 237.]

Date: 1/6/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Brent Westerfeld
bwesterfeld@wkelaw.com

Eric K. Koselke
ekoselke@wkelaw.com

Kenneth Lawrence Riggins
Kennethriggins@yahoo.com

Kimberly Shawntee Robinson
atty.robinson@icloud.com

Steven D. Allen
stevenallenlaw@gmail.com

Harold Samuel Ansell
ATTORNEY AT LAW
attorneyansell@gmail.com

Richard Mark Inman
ATTORNEY AT LAW
markinman13@aol.com

Christopher H. Weintraut
BRATTAIN & MINNIX
cweintraut@brattainminnix.com

Mario Garcia
BRATTAIN MINNIX GARCIA
mgarcia@brattainminnix.com

Edward F. Schrager
COHEN GARELICK & GLAZIER
eschrager@cgglawfirm.com

Kathryn Y. Dinardo
DINARDO LAW P.C.
kate@dinardolawoffice.com

Thomas A. Brodnik
DONINGER TUOHY & BAILEY LLP
tbrodnik@dtblegal.com

Karen Huelskamp
HUELSKAMP & HUELSKAMP
kkhuel@yahoo.com

Jordan Kelby Clouser
HUELSKAMP & HUELSKAMP P.C.
jclouser4517@gmail.com

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

James A. Edgar
J. EDGAR LAW OFFICES, PC.
jedgarlawyer@gmail.com

Alexander E. Budzenski
JASON FLORA LAW OFFICE, LLC
alex@aeblegal.com

Andrew J. Borland
LAW OFFICE OF ANDREW BORLAND
ajb@indianapolisdefense.com

Jessie A. Cook
LAW OFFICE OF JESSIE A. COOK
jessieacook@icloud.com

Larry R. Champion
MEILS THOMPSON DIETZ & BERISH
lchampion@meilsattorney.com

Julie L. Treida
PENCE HENSEL LLC
jtreida@pencehensel.com

Kathleen M. Sweeney
SWEENEY HAYES LLC
ksween@gmail.com

Matthew J. Lasher
UNITED STATES ATTORNEY'S OFFICE
matthew.lasher@usdoj.gov